```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN HALL,                         )
                                   )
              Petitioner           )
                                   )
          vs.                      )
                                   )
JAMES BEARD (D.O.C.), FNU STICKMAN,)    Civil Action No. 04-1179
JOAN MANN, Mailman, CAROL SCIRE,   )    Judge Joy Flowers Conti/
FNU LOCKE, Supt. NEAL K. MECHLING, )    Magistrate Judge Amy Reynolds Hay
The DISTRICT ATTORNEY OF           )
PHILADELPHIA COUNTY, D. REID)      )
(Parol Board)                      )
                                   )
              Respondents          )
```

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 be dismissed. It is also recommended that a certificate of appealability be denied.

### REPORT

The Court gleans the following from Petitioner's habeas petition, which is not a model of clarity.  Petitioner was convicted in Philadelphia County of aggravated and simple assault upon his plea of guilty.  On July 3, 1987, he was sentenced for his guilty plea to be incarcerated for 9½ to 22 years. Petitioner was also convicted of assaulting a corrections officer at SCI-Huntingdon, and received a sentence of six months to two years which was to be served concurrently with the sentence for

aggravated and simple assault.  Petitioner's minimum sentence was March 3, 1997 and his maximum sentence expires on July 3, 2009.

Petitioner filed the instant habeas petition contending that the Pennsylvania Parole Board's denial of parole based on consideration of, *inter alia*, his failure to complete a Sex Offenders Program ("SOP") -- which requires that he admit guilt to a rape for which he says he was not convicted -- violates his Fourth, Fifth, Eighth and Fourteenth Amendment rights.  He also alleges that his guilty plea in 1987 was wrongfully entered because he was on psychiatric medications at the time.   The Respondents answered, contending *inter alia*, that Petitioner's challenge to his guilty plea is time barred.  Petitioner filed a traverse, which did not respond to the statute of limitations issue.

### *Applicable Legal Principles*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for granting state prisoners federal habeas relief for petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996.  Because petitioner's habeas petition was filed in the year 2001, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Generally, a federal habeas petitioner is required to have exhausted his state remedies before filing his habeas petition.

2

28 U.S.C. § 2254(b) & (c).  However, a court need not address the exhaustion requirement if the court can dismiss the habeas petition on other grounds.  See, e.g., 28 U.S.C. § 2254(b)(2).

_____A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law.  28 U.S.C. §2254(a).  Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir. 1992).  Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted.  Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).  A federal court's scope of review is limited as it does not sit to retry state cases de novo but examines the proceedings in the state tribunal to determine if there has been a violation of federal constitutional standards.  Barefoot v. Estelle, 463 U.S. 880 (1983), superceded by statute on other grounds as recognized in, Rickman v. Bell, 131 F.3d 1150, 1165 (6th Cir. 1997); Milton v. Wainwright, 407 U.S. 371 (1972).

### *Discussion*

Petitioner contends that the Pennsylvania Parole Board's ("Board") refusal to parole him is arbitrary and capricious and based on unconstitutional reasons.  Petitioner fails to enlighten the court as to which parole denial he is challenging.  In his motion for appointment of counsel, Petitioner included copies of

Board decisions denying him parole.  These decisions are dated as follows: January 24, 1997, November 20, 1997, June 9, 2000 and May 8, 2002.  Petitioner did not file his current habeas petition until July 28, 2004,[1] more than two years after the most recent Board order denying parole, which Petitioner included in the record.  Accordingly, to the extent that he is attempting to challenge these denials of parole, it would appear that he is time barred under AEDPA's one year statute of limitations.  28 U.S.C. § 2241 (d)(1).[2]  While the Respondents raised AEDPA's statute of limitations defense to Petitioner's challenge to his guilty plea, they did not raise it with respect to his challenge to the parole denials.  Nevertheless, this court has the authority to raise AEDPA's statute of limitations sua sponte so long as the requirements of United States v. Bendolph, 409 F.3d 155 (3d Cir.  2005), *petition for  certiorari filed*, 74 USLW 3025 (June 24, 2005), are met.

---

[1] Utilizing the prisoner mail box rule, the court concludes that the date Petitioner signed his habeas petition is the date he filed it.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998); Rhodes v. Senkowski, 82 F.Supp.2d 160,165 (S.D.N.Y. 2000)("Absent evidence to the contrary, the Court assumes that Rhodes gave his petition to prison officials for mailing on the date he signed it, February 9, 1998.").

[2] AEDPA's statute of limitations applies to prisoners who challenge parole determinations via a section 2254 petition.  Hollawell v. Gillis, 65 Fed.Appx. 809, 812-13 (3d Cir. 2003); Wade v. Robinson, 327 F.3d 328 (4th Cir. 2003); Cook v. New York State Division of Parole, 321 F.3d 274 (2d Cir. 2003); Burger v. Scott, 317 F.3d 1133 (10th Cir. 2003);  Hunter v. Boone, 13 Fed. Appx. 828 (10th Cir. 2001); Brock v. Howes, 96 Fed. Appx. 968 (6th Cir. 2004);  Klopp v. Wolfe, 8 Fed.Appx. 444 (6th Cir. 2001).

4

Bendolph requires that "after the Rule 4 [summary dismissal] period has ended, courts may continue to raise the AEDPA statute of limitations issue sua sponte, but only after providing . . . notice, an opportunity to respond, and an analysis of prejudice." Id. at 158.  Here, the court finds those requirements to be met. This report and recommendation provides notice, and the opportunity to file objections provides an opportunity to respond.  This court finds that Petitioner is not prejudiced by the court's sua sponte raising the statute of limitations.  The time between Petitioner's initiation of this habeas petition (i.e., July 2004) and the time this court is sua sponte raising the statute of limitations issue (October 2005), approximately 16 months, is actually shorter than the time in Bendolph, which was almost two years.  Moreover, what the Court stated in Bendolph applies equally here, that during the time between the filing of the instant petition and the raising of the statute of limitations, "[t]here is no evidence that he [i.e., Petitioner] had commenced costly or time-consuming discovery, suffered a loss or a diminution of his ability to prepare his case, or lost another litigation opportunity elsewhere." Bendolph, 409 F.3d at 169.[3]  Also, like in Bendolph, there is no evidence of bad faith

---

[3] Bendolph includes in its analysis of prejudice, the question of whether a habeas petitioner had adequate opportunity to respond to the statute of limitations issue after being raised by the court. Bendolph, 409 F.3d at 169.  To the extent that Petitioner needs more time than the 10 days permitted for objections to adequately respond to the statute of limitations issue, he may always seek an extension

on the part of the Respondents, if anything, it appears that mere inadvertence is responsible for the Respondents not raising this issue.

Hence, this court finds that the challenges to Petitioner's denials of parole that occurred prior to July 28, 2003, i.e., one year before he filed his current habeas petition, are all time barred under AEDPA's one year statute of limitations.

The most recent Board order denying Petitioner parole, which was provided by the Respondents in their answer, indicates that the Board denied Petitioner parole on September 18, 2003.  This denial falls within the one-year limitations period and, thus, is not time-barred.  The first issue Petitioner raises is that the Board and the Department of Corrections ("DOC") violated his Fifth Amendment rights against self incrimination when, based on his refusal to admit guilt to sexual crimes as required by the SOP, DOC denied him a recommendation for parole and the Board denied him parole based at least in part on his failure to complete the SOP as well as his failure to obtain the DOC's recommendation.

Petitioner's Fifth Amendment claim fails for at least two reasons: (1) the Fifth Amendment right is not violated until compelled statements are used against a person in a criminal case

---

of time by filing a motion for an extension of time in which to file objections.

and (2) the statements required to be made by Petitioner in order to participate in the SOP are not "compelled" within the meaning of the Fifth Amendment.

The Fifth Amendment right is not violated until compelled statements are used against a person in a criminal case. Chavez v. Martinez, 538 U.S. 760, 766-68 (2003) (plurality).  As explained by the Court, "Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs. . . . mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." Id. (citations omitted).  Thus, even if it can be said that the DOC's and the Board's requirements regarding participation in the SOP, which demands that Petitioner admit to sexual crimes under pain of being denied a positive recommendation, in the case of DOC, or, under pain of possibly being denied parole, in the case of the Board, constitute compulsion under the Fifth Amendment, because Petitioner was "never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case," Petitioner fails to establish that his Fifth Amendment rights were violated. Martinez, 538 U.S. at 767.  As

7

well, there is binding authority in this Circuit on this point. In Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003), the Third Circuit noted that "our prior decision in *Giuffre* [*v. Bissell*, 31 F.3d 1241 (3d Cir. 1994)] compels the conclusion that it is the use of coerced statements during a criminal trial . . . that violates the Constitution."

The second problem with Petitioner's claim is that he has failed to establish that he has suffered compulsion within the meaning of Fifth Amendment jurisprudence.  In this regard, the court finds persuasive the reasoning of McKune v. Lile, 536 U.S. 24 (2002) (plurality opinion)("McKune II").

McKune II involved a program wherein convicted sex offender prisoners were ordered to participate in a treatment program which required that they not only sign a form in which they must "accept responsibility for the crime for which they have been sentenced [but also must] complete a sexual history form, which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses."  Id. at 30. Failure to comply with the mandatory disclosure, resulted automatically in a decrease in the prisoner's privilege status from Level III to Level I, reducing the prisoner's visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to a personal television, etc.  In the case of the particular prisoner at issue in McKune,

the prisoner was going to be transferred from minimum security
unit to a maximum security unit, involving a move from a two
person cell to a four person cell, which resulted in placing him
in a potentially more dangerous environment.  Id. at 30-31.
Moreover, there was no guarantee that the mandatory disclosures
would not be used against a prisoner as, for instance, in
initiating new criminal charges against him.  Id.  The prisoner
in McKune refused to comply with the program, claiming that to do
so would violate his Fifth Amendment right against compulsory
self incrimination.

A plurality of the Supreme Court rejected the claim.  In
doing so, the plurality reasoned that it must determine whether
the consequences a prisoner suffers as a result of refusing to
comply with the disclosures constitutes "compulsion", noting that

> [d]etermining what constitutes unconstitutional
> compulsion involves a question of judgment: Courts
> must decide whether the consequences of an
> inmate's choice to remain silent are close to the
> physical torture which the Constitution clearly
> protects or the de minimus harms against which it
> does not.  The Sandin framework provides a
> reasonable means of assessing whether the response
> of prison administrators to correctional and
> rehabilitative necessities are so out of the
> ordinary that one could sensibly say they rise to
> the level of unconstitutional compulsion.

McKune II, 536 U.S. at 41.  In conducting this analysis, the
plurality noted that in other cases, even more severe
consequences for refusing to disclose were held not to constitute
compulsion for Fifth Amendment purposes.  McKune II, 536 U.S. at

9

43 (discussing <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984)(fear of being returned to prison to serve out 16 months if the prisoner remained silent in the face of a probation violation charge does not amount to compulsion) and <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272 (1998)(a death row inmate could be made to choose between incriminating himself at his clemency interview and having adverse inferences drawn from his silence, which did not amount to compulsion)).  Here, the consequences Petitioner faces I he fails to admit to sexual misdeeds are, at most, for DOC to deny him their recommendation and for the Board to consider his failure as being one reason to weigh against the grant of parole.  Petitioner does not contend and the record does not reveal that Petitioner's complete failure to accept responsibility for his sexual behavior would automatically preclude him from parole.  Indeed, in this respect, even the dissenters in <u>McKune II</u> apparently would not find a violation of Petitioner's Fifth Amendment rights in this instance because there is no evidence that Petitioner would automatically be denied parole if he fails to incriminate himself.  <u>See</u> <u>McKune II</u>, 536 U.S. at 60 (Stevens, J. dissenting)("Moreover, the penalty for refusing to participate in the SATP [i.e. the treatment program requiring disclosures] is automatic.  Instead of conjecture and speculation about the indirect consequences that may flow from a decision to remain silent . . . . The penalty

involved in this case is a mandated official response to the assertion of the privilege."). In contrast to the automatic nature of the penalty in McKune II, here we can only speculate as to the indirect consequences Petitioner's refusal to admit his sexual misdeeds played in DOC's not recommending him for parole and/or the Board's decision to deny him parole, given the myriad of factors DOC takes into consideration in making its recommendation for parole and the myriad of factors the Board takes into consideration in determining parole worthiness. Indeed, the record here reveals that, in its most recent denial of parole, the Board considered among other things, Petitioner's "institutional behavior, including misconducts or CCC failure" and his "interview with the Hearing Examiner and/or Board Member." Doc. 11, Appendix B.

Taking the foregoing into consideration, Petitioner simply has not met his burden to show that the Board's requiring that he admit to his sexual misdeeds violates his Fifth Amendment right against compulsory incrimination. The court's conclusion is bolstered by the fact that the Third Circuit has passed upon this very issue in Thorpe v. Grillo, 80 Fed.Appx. 215 (3d Cir. 2003) and has held the requirement to not violate the Fifth Amendment. Specifically, the Court held as follows:

> Thorpe also contends that the DOC's policy of excluding from the sex offender treatment program those who do not admit guilt to the offense violated his Fifth

Amendment right against self-incrimination.
Thorpe argues that by forcing him to choose
between maintaining his innocence and
participating in a treatment program
necessary for parole recommendation, the DOC
was in effect imposing an automatic
punishment on him for remaining silent.

    Thorpe's Fifth Amendment claim is
unpersuasive. The DOC's policy did not force
Thorpe to incriminate himself in a criminal trial.
*See Chavez v. Martinez*, 538 U.S. 760 (2003)
(suggesting that violations of prophylactic rules
safeguarding the right against self-incrimination
do not amount to actual constitutional violations
as required for civil liability under § 1983); *see
also Renda v. King*, 347 F.3d 550, 559 (3d Cir.
2003) (stating that "it is the use of coerced
statements during a criminal trial . . .  that
violates the Constitution") (citation omitted).
Moreover, Thorpe did not receive additional
punishment for maintaining his innocence under the
DOC's policy. His refusal to admit his guilt and
the resulting inability to participate in the
treatment program did not extend his term of his
incarceration or automatically deprive him of
consideration for parole. *See McKune v. Lile*, 536
U.S. 24, 38 (2002) (Kennedy, J., plurality)
(characterizing compulsion under the Fifth
Amendment as hinging on the automatic nature and
severity of the threatened punishment).  Thorpe
was not entitled to parole, just to consideration
for parole. The DOC's policy did not automatically
deprive him of consideration for parole, although
it may have been influential in that respect.
Therefore, the District Court did not err in
entering summary judgment in favor of the Prison
Officials on Thorpe's Fifth Amendment
self-incrimination claim.

Id. at 219-220.  While the Thorpe opinion is designated as non-

precedential, and hence does not constitute mandatory authority,

nonetheless, it is persuasive authority.[4]  Accord Wolfe v.

_____

    [4]  This court is not unaware of the characterization, found in
DeFoy v. McCullough, 393 F.3d 439, 440 (3d Cir. 2005), *cert. denied*,

<u>Pennsylvania Dep't of Corrections</u>, 334 F.Supp.2d 762 (E.D. Pa. 2004); <u>Perry v. Vaughn</u>, No. CIV.A. 04-CV-0934, 2005 WL 736633 (E.D. Pa. March 31, 2005);  Accordingly, Plaintiff has not established a violation of his Fifth Amendment rights.

Petitioner claims that requiring him to admit to the sex crimes violates his Fourteenth Amendment due process rights.  It is not clear whether Petitioner is making a procedural due process claim or a substantive due process claim.  In either case, he fails to establish a violation.

To the extent that Petitioner is making a procedural due process claim, it must necessarily fail.  Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements.  <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000).  A liberty interest can arise in one of two ways: (1) it can be derived directly from the Due Process clause of the Federal Constitution or (2) it can arise from the state's statutory scheme.  <u>Asquith v. Department of Corrections</u>, 186 F.3d

_____

125 S.Ct. 2970 (2005), that the practice of the Board with respect to requiring a prospective parolee to admit guilt as to his sex offenses is "troubling."  Given the analysis conducted in <u>McKune II</u> and in <u>Thorpe</u>, we find the passing remark in <u>DeFoy</u>, to not be significant for the purposes of deciding this case.

407, 408 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

It is well settled law that the Due Process clause of the Federal Constitution does not of its own force create a liberty interest in parole. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (stating that, "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole revocation which implicates a liberty interest, from parole release decisions which do not). Accordingly, if Petitioner is to assert a viable claim of procedural due process, he must show that the law of Pennsylvania has created a liberty interest in parole.

Hence, the court turns to the question of whether Pennsylvania law creates a liberty interest in parole. It is well established that Pennsylvania State law creates no liberty interest in parole. See, e.g., U.S. ex rel. Schiano v. Luther, 954 F.2d 910, 916 (3d Cir. 1992); Henry v. Bello, No. 92-4341, 1994 WL 27320, *1 (E.D. Pa. Feb. 1. 1994)("However, the Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide whether to grant parole, 61 P.S. § 331.21; therefore, the Commonwealth has not created a

14

liberty interest in parole."); <u>McCrery v. Mark</u>, 823 F.Supp. 288, 293-94 (E.D. Pa.1993) ("the Pennsylvania Probation and Parole Act [cite][sic] cannot be said to create an expectation of parole").[5] Because there is no liberty interest in parole, no matter what procedures or lack thereof the Respondents utilize and no matter what conditions or requirements the Respondents impose, such do not violate procedural due process because such procedures and/or conditions merely deprive him of parole, in which he possesses no liberty interest.

To the extent Petitioner is raising a substantive due process claim, it must also fail.  Substantive due process prohibits certain government actions irrespective of the procedures which attend those actions.  <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 399 (3d Cir.2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that

---

[5] It may well be that the way of analyzing the question of whether Pennsylvania has created a liberty interest in parole has changed since the Supreme Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995), but the answer remains the same after <u>Sandin</u> as before <u>Sandin</u> – Pennsylvania has not created a liberty interest in parole. <u>See</u>, <u>e.g.</u>, <u>Rauso v. Vaughn</u>, No. 96-6977, 2000 WL 873285, at *7 n.15 (E.D. Pa. June 26, 2000); <u>Gregg v. Smith</u>, No. 97-4894, 1998 WL 309860, at *2 (E.D. Pa. June 10, 1998)("plaintiff has no protected liberty interest in receiving parole which is discretionary in Pennsylvania...."); <u>Ramos v. Vaughn</u>, No. 94-2596, 1995 WL 386573, at *6  (E.D. Pa. June 27, 1995)("Neither the United States Constitution nor Pennsylvania law creates a protected liberty interest in being released from confinement prior to the expiration of the term of the imposed sentence."), <u>aff'd</u>, 85 F.3d 612 (3d Cir. 1996)(Table).

it employs, and covers government conduct in both legislative and executive capacities.").

The standard for analyzing a substantive due process claim appears to depend upon whether one is challenging legislative or executive action.  See, e.g., Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'")(quoting, Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)).  The parole board is an executive branch agency.  See Apprendi v. New Jersey, 530 U.S. 466, 549 (2000)(describing parole board officials as executive branch officials).  The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience.  See, e.g.,  Hunterson v. DiSabato, 308 F.3d 236, 247 n. 10 (3d Cir. 2002).

Although the "shock the conscience" test may be less than precise, in giving content to the test, the Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'"  Martinez, 538

16

U.S. at 775 (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998)).

Petitioner fails to show that requiring him to successfully complete a sex offenders treatment program that requires Petitioner to admit guilt is conscience shocking or that such a requirement constitutes behavior that is intended to injure Petitioner in a way that is unjustifiable by any government interest.

Progress by the parole applicant in the process of rehabilitation is a legitimate consideration for the Board. <u>See McGinnis v. Royster</u>, 410 U.S. 263, 277 (1973)(it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"). It is generally acknowledged that an integral part of making progress in rehabilitation is acceptance of responsibility for one's crimes, both charged and uncharged, and it is at least not irrational to believe that acceptance of responsibility is an important step on the road to rehabilitation, a legitimate penological goal.  <u>See</u>, <u>e.g.</u>, <u>McKune II</u>, 536 U.S. at 32 – 35.[6]

---

[6]As the opinion in <u>McKune II</u> observed:

An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct. Id., at 73. "Denial is generally regarded as a main impediment to successful therapy," and "[t]herapists depend on offenders' truthful descriptions of events leading to past offences in order to

17

Indeed, "[a]cceptance of responsibility is the beginning of rehabilitation."  Id. at 47.  See also Johnson v. Baker, 108 F.3d 10, 12 (2nd Cir.1997)("[a]n inmate who is unwilling to admit to particular criminal activity is unlikely to benefit from a rehabilitative process aimed at helping those guilty of that activity.").  Hence, it is wholly legitimate for the Board to consider whether Petitioner acknowledges responsibility for his criminal behavior and neither arbitrary nor capricious.  See, e.g., Walters v. Ross, 1992 WL 398307, at * 3 - 4 n.2 (E.D.N.Y. Dec. 21, 1992)(the Court found the parole board's consideration of "petitioner's refusal to accept full responsibility for his crime" was not "arbitrary and capricious").  Accordingly, Petitioner has failed to carry his burden of showing that the Board's requirement that he admit his guilt for his past criminal behavior shocks this court's conscience or is arbitrary or capricious.  Hence, he has failed to show a violation of his substantive due process rights.

Petitioner also complains that the requirement to participate in and successfully complete the SOP violates his

---

determine which behaviours need to be targeted in therapy."
H. Barbaree, Denial and Minimization Among Sex Offenders:
Assessment and Treatment Outcome, 3 Forum on Corrections
Research, No. 4, p. 30 (1991). Research indicates that
offenders who deny all allegations of sexual abuse are three
times more likely to fail in treatment than those who admit
even partial complicity. See B. Maletzky McGovern, Treating
the Sexual Offender 253-255 (1991).

536 U.S. at 33.

Fourth and Eighth Amendment rights.  To establish an Eighth Amendment claim, one must establish that he has been "deprived of the minimal civilized measure of life's necessities." <u>Young v. Quinlan</u>, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), *superseded by statute on other grounds as stated in* <u>Ghana v. Holland</u>, 226 F.3d 175, 184 (3d Cir. 2000).  Proving that one has been deprived of the minimal civilized measure of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997).  Here, Petitioner only claims that he has been denied parole, which requires him to continue to serve his judicially imposed sentences for his convictions.  Denying him parole and requiring him to continue to serve his judicially imposed sentences does not deprive Petitioner of the minimal civilized measure of life's necessities.  <u>Williamson v. Angelone</u>, 197 F.Supp.2d 476, 480 (E.D. Va. 2001)("Plaintiff's allegations regarding the Board's decision to deny his release on parole fail to state a claim of 'cruel or unusual' treatment in violation of the Eighth Amendment."); <u>White v. Cockrell</u>, No. Civ.A. 3:00CV 1951-L, 2002 WL 180885, *3 (N.D. Tex. Jan. 31, 2002)("It is neither cruel nor unusual punishment, furthermore, to deny a prisoner parole and have him serve his lawfully imposed sentence."); <u>Butler v. Calderon</u>, No. C 97-2184 EDL(PR), 1998 WL

19

387612, *5 (N.D. Cal. July 6, 1998)("the injury suffered by a prisoner who is denied early release 'does not offend the standards of decency in modern society' and does not amount to an Eighth Amendment violation."); Hayes v. Muller, No. Civ.A. 96-3420, 1996 WL 583180 (E.D. Pa. Oct. 10, 1996)(because "prisoners have no legitimate entitlement to parole prior to the completion of their sentence, neither the denial of parole nor the lack of enforceable parole guidelines can constitute cruel and unusual punishment").

Petitioner also claims that requiring him to participate in the SOP violates his Fourth Amendment rights.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Denial of parole does not effect a seizure.  The court is at a loss to see how the Fourth Amendment is applicable to the facts of this case, yet alone violated.  Accordingly, this issue does not merit relief.

It also appears that Petitioner is attempting to mount a challenge to his guilty plea, which apparently occurred on or sometime before July 3, 1987, the date on which his sentence was

imposed.  Respondents contend that such a challenge is time barred under AEDPA's one year statute of limitations.  Doc. 11 at ¶ 10.  Petitioner did not respond in his traverse to the Respondents' invocation of AEDPA's statute of limitations.  Nor does it appear from the habeas petition that he filed a post conviction relief act petition in the state courts challenging his conviction.   Because the Respondents raised the affirmative defense of the statute of limitations, and hence, Petitioner has been put on notice of a statute of limitations issue, it is appropriate to place some burden on him to show why the statute of limitations has not run.  See, e.g., Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed."); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response") (citing Herbst v. Cook, 260 F.3d 1039, 1041-42 (9th Cir. 2001)); Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002).

Notwithstanding Petitioner's failure to address the issue, it appears that he filed the instant habeas corpus petition some seventeen years after his guilty plea and absent any evidence in the record to support tolling of the statute of limitations, the district court should dismiss the challenge to his conviction as time-barred.

As none of Petitioner's claims merits the grant of habeas relief, the petition should be dismissed.

A certificate of appealability is required by  28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals.  As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner herein has not made a "substantial showing" that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

<u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the

objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

By the Court,

/s/   Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge


Dated: November 4, 2005

cc:  The Honorable Joy Flowers Conti
     United States District Judge

     John J. Hall
     AS-0567
     SCI Fayette
     Box 9999
     LaBelle, PA 15450-0999

     Robert S. Englesberg
     Office of Attorney General
     Fifth Floor, Manor Complex
     564 Forbes Avenue
     Pittsburgh, PA 15219